```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

**Budejovicky Budvar, N.P.,**          :
    **Petitioner/Plaintiff,**         :
                                   :
**v.**                                 :         Case No. 3:05cv1246 (JBA)
                                   :
**Czech Beer Importers, Inc.,**        :
    **Respondent/Defendant.**         :

**RULING AND ORDER ON PENDING POST-JUDGMENT MOTIONS**
**[DOCS. ## 12, 18, 26]**

Petitioner Budejovicky Budvar, N.P. ("Budejovicky"), a company organized under the laws of the Czech Republic, instituted this action on August 5, 2005 against respondent Czech Beer Importers, Inc., a Connecticut corporation, by filing its Petition for Order Confirming Foreign Arbitral Award [Doc. # 1], seeking to confirm pursuant to 9 U.S.C. § 207 an arbitration award rendered in its favor by the Court of Arbitration at the Economic Chamber of the Czech Republic and of the Agrarian Chamber of the Czech Republic ("Arbitration Award").  See id. at Exs. B, C.  The parties' dispute arose out of an agreement between them for the importing, marketing and distribution of petitioner's Czechvar Premium Czech Lager beer in the United States by respondent, see id. at Ex. A ("Distribution Agreement"), which agreement petitioner alleged respondent breached by accepting petitioner's beer but failing to pay seven invoices in the total amount of $120,150.95.  Id. ¶¶ 7.  On October 31, 2005, this Court entered an Order confirming the

1

Arbitration Award, see Order [Doc. # 8], and on November 1, 2005, the Court entered judgment for petitioner awarding damages including administrative fees, expenses, and attorneys' fees associated with the arbitration, as well as pre- and post-judgment interest, see Judgment [Doc. # 9].

Subsequently, petitioner moved to alter or amend the judgment to reflect the correct exchange rate, to provide for pre-judgment interest on certain amounts from certain specified dates, to enhance the post-judgment interest rate, and for attorneys fees and reimbursement of costs associated with litigating this action.  See Motion to Alter/Amend [Doc. # 12]. Shortly thereafter, respondent moved to vacate the judgment on the basis that it was obtained as the result of inadvertence, surprise, and excusable neglect.  See Motion to Vacate [Doc. # 18].  Petitioner also recently moved to reopen the case on the basis that the two motions described above remain pending.  See Motion to Reopen Case [Doc. # 26].

For the reasons that follow, the Court denies respondent's Motion to Vacate, grants in part and denies in part petitioners' Motion to Alter/Amend, and denies the Motion to Reopen as moot.

**I.   Motion to Vacate**

    **A.   Standard**

Fed. R. Civ. P. 60(b)(1) permits the Court to "relieve a party or a party's legal representative from a final judgment,

order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." The Second Circuit has established the following criteria to be considered in determining whether the Rule 60(b)(1) standard has been satisfied: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996). "Strong public policy favors resolving disputes on the merits," see id. at 61, and as such, "all doubts should be resolved in favor of those seeking relief under . . . [Rule] 60(b)," Davis v. Musler, 713 F.2d 907, 915 (2d Cir. 1983); accord Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 98 (2d Cir. 1993) ("[A]ll doubts must be resolved in favor of trial on the merits.").

**B.   Discussion**

1.   Willfulness

The Second Circuit has "implied that it will look for bad faith, or at least something more than mere negligence, before rejecting a claim of excusable neglect based on an attorney's or a litigant's error." Am. Alliance Ins. Co., 92 F.3d at 60-61 ("We see no reason to expand this Court's willfulness standard to include careless or negligent errors in the default judgment context."). "At the same time . . . the degree of negligence in precipitating a default is a relevant factor to be considered. .

3

. . Gross negligence can weigh against the party seeking relief from a default judgment, although it does not necessarily preclude relief." Id. at 61.

While respondent acknowledges that "procedurally service was complete when the Connecticut Secretary of State received the Summons and Complaint," see Motion to Vacate at 4, respondent represents that it did not actually receive the Notice of Service of Process along with the Summons and Complaint from the Secretary of State until October 26, 2005 because the documents were originally sent to respondent's former business address and then forwarded to respondent's current address. See id. at 3; Neuner Aff. [Doc. # 18-2] ¶¶ 3-6.  Upon receipt, respondent immediately forwarded the documents to its attorney, Mark Pomerantz, who received them on October 28, 2005.  Neuner Aff. ¶¶ 7-8; Pomerantz Aff. [Doc. # 18-3] ¶ 3.  Attorney Pomerantz prepared and sent to the Clerk of Court an answer to the petition, a copy of which he also sent to counsel for petitioner via overnight mail.  Pomerantz Aff. ¶ 5 & Ex. 2.  Respondent's answer was apparently never docketed.

Petitioner argues that respondent's failure to appear was in bad faith because it had notice that petitioner intended to file a petition to confirm on the basis of phone calls between petitioner's counsel and respondent's counsel and because petitioner's counsel sent a copy of her Notice of Appearance,

4

which referenced the case name and number, to respondent's counsel.  See Notice of Appearance [Doc. # 4]; Juras Affidavit [Doc. # 25] ¶¶ 3-6.  However, respondent's counsel represents that although he spoke with petitioner's counsel in the spring of 2005 regarding the Arbitration Award, petitioner's counsel did not inform him that a petition to enforce the award had actually been filed and thus "[t]he first time that [he] learned that the petition to enforce the Czech Arbitral Award had been filed was on October 28, 2005, when [he] received the Notice of Service of Process, along with the Summons and Complaint commencing this action from Czech Beer via Overnight Mail."  Pomeranz Second Affidavit [Doc. # 24-2] ¶¶ 4-6.

Thus, notwithstanding that service was accomplished substantially before this Court issued its Order and Judgment on October 31 and November 1, 2005, and even though respondent's counsel may have received a copy of Attorney Juras's notice of appearance in this case in September, given that "all doubts should be resolved in favor of [respondent]," Davis, 713 F.2d at 915, and because respondent and its counsel represent that they did not have notice of this case until October 26, 2005, the Court cannot say that respondent acted in bad faith in failing to respond earlier.  Indeed, upon receiving notice from the Secretary of State, respondent immediately prepared an answer to be filed, which suggests that respondent did not deliberately

choose not to appear in the action earlier.

Accordingly, while respondent's conduct in failing to follow up upon receipt of Attorney Juras's notice of appearance and in failing to provide the Secretary of State with an updated mailing address may constitute carelessness or negligence, it does not rise to the level of bad faith.  See Enron Oil Corp., 10 F.3d at 98 ("[Defendant] made a good faith effort to adhere to the rules of the court and to protect his rights, and therefore did not willfully default," where it was disputed whether defendant received the second amended complaint and "when he finally received a copy of this pleading, along with [plaintiff's] motion for entry of default, he responded immediately, making clear that he was not willing to forfeit his rights.  Again, when the court entered a default against him, [defendant] assumed that it had done so without reading his June 11 letter and affidavit, and promptly applied for a motion to set aside the entry.").

### 2.   Merits of Respondent's Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage.  A defense is meritorious if it is good at law so as to give the factfinder some determination to make."  Am. Alliance Ins. Co., 92 F.3d at 61; accord Davis, 713 F.2d at 916 ("[A] defendant seeking to vacate a default judgment need not conclusively establish the validity of the defense(s) asserted.").

Defendant argues that the Arbitration Award should not be enforced because of purported due process violations committed by the arbitrators in limiting the involvement of Czech Beer co-owner Petr Bohacek in the arbitral proceedings and in failing to consider Czech Beer's counterclaim and setoff arguments.  Mr. Bohacek contends that he traveled to the Czech Arbitration Court on the dates of the three arbitral hearings for the purpose of participating in the proceedings but the arbitral panel refused to allow him to be present during the proceedings or appear as a witness.  Bohacek Aff. [Doc. # 18-4] ¶¶ 6-14.  While respondent ultimately agrees with petitioner's observation that it eventually withdrew its proposal to present the testimony of Mr. Bohacek, it contends that "this withdrawal is irrelevant" because it "ha[d] the right to have its co-owner present during the oral proceedings to assist the company's lawyer in defending the company and asserting its claims."  Respondent Reply [Doc. # 24-1] at 3.  Additionally, while petitioner claims that the arbitral panel considered respondent's arguments regarding counterclaims and setoffs and "properly decided that [it] did not have jurisdiction to hear [respondent's] counterclaim," and denied respondent's setoff because respondent "failed to comply with the provision of the Distribution Agreement to which [respondent] voluntarily agreed," Pet. Obj. [Doc. # 22] at 2, respondent argues that the arbitral panel did not properly consider these

issues, offering only "bare" conclusions.  Resp. Reply at 4.

"Under Article V(1)(b) of the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards], enforcement of a foreign arbitral award may be denied if the defendant can prove that he was not given proper notice . . . or was otherwise unable to present his case.  This provision essentially sanctions the application of the forum state's standards of due process." Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA), 508 F.2d 969, 975 (2d Cir. 1974).  Accordingly, "[u]nder our law, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 146 (2d Cir. 1992).

First, as to respondent's claim concerning the testimony and participation of Mr. Bohacek in the arbitral proceedings, it is clear from the Arbitration Award that respondent ultimately withdrew its proposal to present his testimony.  See Arbitration Award ¶ 52.  Further, while respondent modifies its argument in its reply to focus on the exclusion of Mr. Bohacek from the oral proceedings, that claim is also unpersuasive.  Although the Convention and due process principles provide that respondent must be given the opportunity to present its case, respondent was represented by legal counsel during the arbitration and respondent's briefing gives no indiction as to how it claims

these rights were impacted by the absence of Mr. Bohacek during the proceedings.  Cf. Parsons & Whittemore, 508 F.2d at 975-76 (no due process violation where arbitral tribunal refused to reschedule a hearing for the convenience of an overseas witness absent indication that party was prejudiced by the decision where arbitral tribunal considered all critical evidence including an affidavit from the individual).

As to respondent's claim of failure to consider its counterclaim and setoff arguments, those claims were considered and rejected by the arbitral panel.  The panel acknowledged respondent's counterclaim concerning the advertising arrangements between the parties, apparently concluding that it did not have jurisdiction over the counterclaim because the advertising contracts did not have arbitration clauses and, further, because respondent did not produce a copy of one of the contracts.  See Arbitration Award ¶¶ 27, 29, 30, 52.  Additionally, even if respondent's counterclaim concerning the advertising arrangements, if properly litigated in the agreed-upon forum, entitled respondent to an award, it would be a separate claim, not a defense to petitioner's claim of breach of the Distribution Agreement nor, therefore, to enforcement of the Arbitration Award.  The record gives no indication that respondent has commenced another proceeding to assert such a claim.  As to respondent's setoff argument, the arbitral panel also considered

this issue, ultimately rejecting it, finding that respondent had not given timely notice to petitioner of the claimed non-conformities of the beer in accordance with the Distribution Agreement.  See Distribution Agreement ¶ 10.3; Arbitration Award ¶¶ 40-42, 59-64.

         C.   Potential Prejudice

Further, although respondent argues that there will be no prejudice to petitioner if the judgment is vacated because, inter alia, petitioner waited nearly a year before seeking to enforce the Arbitration Award and is itself seeking to amend the judgment, and thus contends that vacating the judgment and allowing the petition to be decided on its merits is in the interest of both parties, respondent underestimates the potential prejudice to the petitioner.  Petitioner has sought payment from respondent on the Arbitration Award for over a year and a half and vacating the judgment simply adds further cost and delay in payment to petitioner which has not been shown to be justified by any likely different outcome after consideration of the petition on the merits.

    D.   Summary

Thus, while the Court does not find that respondent was willful or acted in bad faith in failing to respond to the petition in an expeditious fashion, because respondent has not shown a potentially meritorious defense to the enforcement of the

Arbitration Award, and in consideration of the prejudice petitioner would suffer if the Judgment were vacated, the Court denies respondent's Motion to Vacate.

### III. Motion to Alter/Amend

**A. Standard**

Under Fed. R. Civ. P. 59(e), a party may file a motion to alter or amend a judgment no later than 10 days after entry of the judgment. Such a motion, akin to a motion for reconsideration, will not be granted unless "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." In re BDC 56, LLC, 330 F.3d 111, 123 (2d Cir. 2003) (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). Rulings under Rule 59(e) are "committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983).

**B. Discussion**

1. Exchange Rate

The awards made by the Court in its judgment reflected the exchange rate between Czech Crowns ("CZK") and United States Dollars as of July 11, 2005, which rate was referenced in the original petition. See Petition ¶ 9. The parties now agree that using the exchange rate as of that date is improper; petitioner

argues that the exchange rate as of the date of judgment should be applied, and respondent contends that the date of payment ("conversion") should be used, in accordance with Connecticut law.

While respondent is correct that the court in <u>Dynamic Cassette Int'l Ltd. v. Mike Lopez & Assocs., Inc.</u>, 923 F. Supp. 8, 11 (E.D.N.Y. 1996), applied the New York judgment-date rule, whereas Connecticut follows the conversion-date rule, <u>see</u> Conn. Gen. Stat. § 50a-57, respondent is incorrect that Connecticut law applies in this case. <u>Dynamic Cassette Int'l</u> held that "[a]ctions to enforce foreign judgments brought in federal courts pursuant to diversity jurisdiction are governed by the laws of the forum state." Jurisdiction in this case is invoked under 9 U.S.C. § 203, not on diversity grounds, and thus, the <u>Dynamic Cassette Int'l</u> rule does not apply. The Second Circuit has noted that "[t]he Federal rule [for the date of the rate of exchange] . . . is that when an obligation is governed by foreign law, the conversion from the foreign currency into dollars is to be made at the rate of exchange prevailing at judgment." <u>Conte v. Flota Mercante Del Estado</u>, 277 F.2d 664, 670 (2d Cir. 1960).[1]  Thus,

---

[1] Although the Second Circuit has noted that while "[m]ost American courts have assumed that American judgments must be entered in dollars . . . [based] on either common law notions of sovereignty, . . . or, at least in part, on the now repealed section 20 of the Coinage Act of 1792," and that "[t]his assumption probably deserves reexamination in light of the repeal of section 20," <u>see</u> <u>Competex, S.A. v. Labow</u>, 783 F.2d 333, 337 &

because this case concerns enforcement of a Czech arbitration award arising out a dispute concerning a contract governed by Czech law, the Court applies the judgment-day currency conversion rule.

Accordingly, as judgment entered on November 1, 2005, the Court applies the conversion rate in effect on that date.  The parties also dispute this rate, with petitioner contending the exchange rate was 24.689 CZK to the United States Dollar (citing the Czech National Bank's website, www.cnb.cz), and respondent claiming 24.693 CZK to the United States Dollar as the correct rate (citing OANDA.com).  Because the exchange rate in the Czech Republic is set by the Czech National Bank, the Court relies on the exchange rate posted on its website: 24.689 CZK to the United States Dollar.  See Czech National Bank Central Bank Exchange Rate Fixing, http://www.cnb.cz/en/financial_ markets/foreign_exchange_market/exchange_rate_fixing/daily.jsp (last visited June 26, 2006).  Thus, the Court will amend its judgment to reflect this conversion rate, and specifically to award petitioner $9,643.48 for the arbitration fee, $5,873.06 in

---

n.9 (2d Cir. 1986), the Circuit does not appear to have engaged in such reexamination and thus this Court adheres to the historically predominant view that the judgment should be converted into U.S. Dollars.  But see In re Oil Spill by the Amoco Cadiz, 954 F.2d 1279, 1328 (7th Cir. 1992) (no bar to judgment in the appropriate currency); Sea-Roy Corp. v. Parts R Parts, Inc., 173 F.3d 851 (4th Cir. 1999) (rejecting plaintiffs' argument that district court committed error in instructing the jury to award damages in deutschemarks rather than dollars).

arbitration expenses, and $10,125.97 in attorneys' fees.

### 2. Pre-Judgment Interest Dates

Next, petitioner argues that the judgment should be amended to reflect that pre-judgment interest (in the amount of 7.65%, as stipulated in the Distribution Agreement) shall run on certain amounts and from certain dates as provided in the Arbitration Award. Respondent does not appear to contest petitioner's claim. In fact, the Court <u>expressly</u> stated its intention to make such an award by the specification in its Order of an award of "$102,150.95, plus interest at 7.65% <u>on the amounts and from the dates recited</u>." See Order [Doc. # 8] (emphasis added). However, to clarify any confusion, the Court will amend the judgment to delineate the amounts and pre-judgment interests dates as set out in the Arbitration Award, specifically:

$7,455.65, interest running from August 21, 2003;

$15,544.35, interest running from August 28, 2003;

$15,544.35, interest running from September 26, 2003;

$15,723.00, interest running from September 9, 2003;

$16,616.25, interest running from September 19, 2003;

$15,544.35, interest running from November 19, 2003;

$15,723.00, interest running from December 7, 2003.

### 3. Post-Judgment Interest Rate

Petitioner also seeks to amend the judgment to award post-judgment interest at the same rate as that awarded for pre-

14

judgment interest, namely the 7.65% rate provided by the Distribution Agreement.  The Court initially awarded pre-judgment interest in the amount of 7.65% and post-judgment interest pursuant to 28 U.S.C. § 1961.  Petitioner argues that the Arbitration Award awarded petitioner interest at the rate of 7.65% on the amounts specified above from the dates specified above "up to the date of full payment," and contends that "[i]t is well established that parties can agree to an interest rate other than the standard one contained in 28 U.S.C. § 1961."  Motion to Alter/Amend at 2-3.  Respondent contends that while parties may contract out of the interest rate provided in Section 1961, they did not do so in this case because "'agreeing to be bound by [a foreign country's] law does not amount to agreeing to a particular post-judgment interest rate.'"  Resp. Opp. [Doc. # 19] at 4 (citing Society of Lloyd's v. Reinhart, 402 F.3d 982, 1004 (10th Cir. 2005)).

While it is not disputed "that parties may by contract set a post-judgment rate at which interest shall be payable," see Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 101 (2d Cir. 2004), the parties dispute whether they did so in this case.  The Second Circuit has noted that in considering whether parties to an agreement "contracted out" of Section 1961, "[m]ost fundamentally, such contracts must actually indicate the parties' intent to deviate from § 1961."  Id. at 102.  Petitioner points

15

to the fact that the parties agreed to resolve disputes by arbitration under Czech law and "under Czech law, a debt created by contract is not merged into the judgment entered on that contract, and language stating that 'an interest at the rate of 7.65% will accrue until the date of full payment' is interpreted as applying not only to the debt itself and to the arbitral award, but also to any judgment subsequently entered enforcing the award."  Petitioner Reply [Doc. # 20] at 2-3.  However, as respondent observes, "agreeing to be bound by [a foreign] law does not amount to agreeing to a particular post-judgment interest rate. . . . If parties want to override the general [federal] rule on merger and specify a post-judgment interest rate, they must express such intent through clear, unambiguous and unequivocal language."  Society of Lloyd's, 402 F.3d at 1004.

Thus, even though the parties agreed that their contract would be governed by Czech law, applying the general federal rule that "when a valid and final judgment for the payment of money is rendered, the original claim is extinguished, and a new cause of action on the judgment is substituted for it," id., the Court will adhere to its original determination to award post-judgment interest, running from the date of the initial judgment (November 1, 2005), at the rate provided by 28 U.S.C. § 1961.  Accordingly, pre-judgment interest at the rate of 7.65% will be awarded on the amounts and from the dates specified above in Section III.B.2

16

until the date of judgment, and post-judgment interest will be awarded on the total amount of the judgment at the federal statutory rate provided in Section 1961.

### 4. Costs and Fees

Petitioner also seeks an award of costs pursuant to Fed. R. Civ. P. 54(d) and an award of attorneys' fees incurred in this action pursuant to the Court's inherent equitable powers.

Fed. R. Civ. P. 54(d)(1) provides "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs."  "Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)."  Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987), superceded by statute on other grounds as stated in Mojica v. Gannett Co., Inc., 7 F.3d 552, 556 (7th Cir. 1993); 28 U.S.C. § 1920.  Having the discretion to determine and award costs, within the constraints of Section 1920, the Court grants petitioner's request to amend the judgment to provide for costs in the amount of $655.40, representing allowable costs under Section 1920.

As to fees, "[a]lthough the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal

17

courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." Hall v. Cole, 412 U.S. 1, 4-5 (1973). Thus, "a federal court may award counsel fees to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. (internal citation omitted). "In actions for the confirmation and enforcement of arbitral awards, a court may award attorneys' fees if the party challenging the award has refused to abide by an arbitrator's decision without justification." First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338, 118 F.3d 892, 898 (2d Cir. 1997).

Petitioner claims that it is entitled to attorneys' fees because "more than a year has passed since the Arbitral Award was rendered [and] Respondent refuses to abide by the arbitrators' decision." Petitioner Reply at 4. As detailed above, respondent's failure to appear earlier in this action and timely oppose the petition, while careless, does not appear to have been willful. Further, while the Court has found respondent's objections to enforcement of the Arbitration Award without merit, the objections were not so totally meritless to be seen as interposed solely as a delay tactic. Thus, the Court does not find that respondent's conduct rose to the level to justify an award of fees in this case. See Int'l Bhd. of Elec. Workers v.

Roberts, 992 F. Supp. 132, 136-37 (N.D.N.Y. 1998) (finding imposition of fees not appropriate "merely because [respondent's] arguments [were] rejected. [Respondent's] papers make plain that his refusal to comply with the award . . . was based on his good-faith belief that the award did not bind him"); Donel Corp. v. Kosher Overseers Assoc. of America, No. 92civ8277 (DLC), 2001 WL 228364, at *4 (S.D.N.Y. Mar. 8, 2001) (refusing to award fees, noting "[w]hile it would appear that the opposition to the petition to confirm the arbitration award is simply one more effort by [respondent] to postpone the day of judgment, this Court is not prepared to find that [respondent] has so little justification for its opposition to this petition that it is appropriate to award attorneys' fees").

**IV.  Motion to Reopen**

Petitioner has moved to reopen this case on the basis that the two other motions discussed herein are still pending.  Such a motion is unnecessary as post-judgment motions are routinely briefed and decided even though the case is technically "closed" by the judgment.  The motion is also now mooted by the Court's rulings on the other two pending motions.  Accordingly, the Motion to Reopen is denied.

**V.   Conclusion**

For the foregoing reasons, respondent's Motion to Vacate [Doc. # 18] is DENIED, petitioner's Motion to Alter/Amend [Doc. #

12] is GRANTED IN PART AND DENIED IN PART, and petitioner's Motion to Reopen [Doc. # 26] is DENIED.  This Court's initial Judgment [Doc. # 9] is VACATED and an amended judgment shall enter in accordance with this ruling.

IT IS SO ORDERED.

/s/
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 10th day of July, 2006.**